This suit is the result of a bus-automobile collision which took place at the intersection of St. Ferdinand and Spain Streets in the City of Baton Rouge, on Saturday, November 23, 1939. The plaintiff, who intended to attend a football game, was a pay passenger on a bus which was travelling south on St. Ferdinand Street on its way to the L.S.U. stadium. The automobile in the collision was being driven west on Spain Street by Mr. C. Anderson Friis, a resident of Natchez, Mississippi, who was likewise on his way to the football game. The collision occurred slightly to the south and west of the center of the intersection, the bus being struck on its front left side and the automobile on its front right side. Plaintiff claims damages for personal injuries sustained by him in the accident, and makes parties defendant the Baton Rouge Bus Company, Inc., the owner of the bus, E.J. Rogers, the driver of the bus, C. Anderson Friis, the owner of the automobile, and his insurer, the St. Paul Mercury Indemnity Company.
Plaintiff charges negligence to both drivers of the motor vehicles in: first, excessive speed; second, failing to keep a proper lookout; third, failing to keep their respective vehicles under proper control.
Each set of defendants, the bus company and its driver, Mr. Friis and his insurance carrier, filed separate answers in which each denied negligence on their part, but charged each other with negligence as being the proximate cause of the accident.
The trial resulted in a judgment in favor of the plaintiff and against the defendants, in solido, in the sum of $6,221, and also fixed the fees of the medical experts who testified in the case. The defendants have appealed. The plaintiff has answered the appeal asking that the judgment be increased to the sum of $10,221.
The question of the liability of the defendants for the injury to the plaintiff is not seriously contested in this court. From defendants' oral argument and briefs, regardless of the fact that they had presented separate defences seeking to establish the cause of the collision on the other, they concede that the collision was the result of the joint and combined negligence of both the driver of the bus and the driver of the automobile. It is also conceded that the sum of $221 for medical expenses has been proved and no objection is made as to the fees allowed the medical experts. The sole question presented to us is the extent of the injuries received by the plaintiff and the damages to be assessed therefor.
Plaintiff was sitting on a horizontal seat on the left hand side of the bus, extending a few inches from the driver's seat. By the collision he was thrown forward and struck some object in the front which caused a bruise over his right eye and some slight injury to his head and neck. He, at that time, did not believe his injury to be of any consequence, only feeling a stinging sensation to his right eye, affecting the sight of that eye. He continued on his way to the stadium to witness the football game. At *West Page 57 
the stadium he remained until the game was practically three-fourths played, when, on account of the pains in his neck and his eye, he left and went to his home at Istrouma Heights, a suburb of Baton Rouge.
On the next morning his condition not having improved, he consulted Dr. Stander. Plaintiff complained to Dr. Stander that he was suffering pains in his neck and of defect of sight in his right eye. Dr. Stander found contusions about the eye. He bandaged the eye and for the pain in his neck gave the plaintiff heat treatment by light. A few days thereafter, since plaintiff was still complaining about the condition of his eye, Dr. Stander removed the bandage, and upon perceiving that the condition of the eye had become worse and that plaintiff complained that he was unable to see well out of the eye, advised plaintiff that he see an eye specialist.
The plaintiff then consulted Dr. J. Ralph Phillips, who appears to be a reputable and competent eye specialist of Baton Rouge. Dr. Phillips examined the plaintiff and had him under observation for a period of several months. He is emphatic in his testimony that plaintiff suffers at least three serious defects in his eye, which practically renders it useless for ordinary purposes. First, he has a constricted or restricted vision of the right eye; that is, the vision does not extend to the sides or in the perepheral sphere, making it impossible for him to see an object out of his eye unless it is immediately in front of him. Second, that the optic nerve shows some congestion, which in itself is likely to cause some impairment of vision in the eye; that this optic nerve shows some slight paleness, which is indicative of some trauma or other disturbance of this nerve. Third, that the plaintiff is suffering from myopia or near-sightedness in the right eye, which requires him to use a minus 7 or minus 8 lens to correct that condition and to enable him to see anything normally out of the eye. In so far as the left eye is concerned, he found nothing wrong therewith. He made several tests and was convinced that the plaintiff suffers impairment of vision and that he was further convinced that the plaintiff was not malingering or trying to deceive anyone respecting his ability to see. He further found that the center of vision in the right eye was 20/100, which is an impairment of vision of about 50%. He saw the plaintiff just before the trial, at which time the plaintiff could count fingers by his affected eye at about two feet. He is of the further opinion that while plaintiff, with the use of minus 7 lens on his right eye would practically have normal vision in that eye, cannot wear glasses, for the reason that it would cause him to have double vision and headaches; that is, it would be impractical for the plaintiff to wear such glasses at all times.
Dr. Phillips having to absent himself for some time while treating plaintiff, referred the plaintiff to Dr. Lionel F. Lorio, who is also a reputable eye specialist, for examination and treatment. Dr. Lorio examined the plaintiff several times and had him under observation. Dr. Lorio's testimony corroborates Dr. Phillips' findings and opinion on practically all points. Dr. Lorio also is of the opinion that plaintiff was not faking, but really suffers an impairment of vision in his right eye as he claims.
The defendant offered as expert witnesses the testimony of Drs. Victor Smith and Wallace Beil of New Orleans. These two doctors examined the plaintiff only a short while before the trial. Both of these doctors testified in substance that they could find nothing wrong with the structure of the plaintiff's right eye and no impairment of vision in that eye, except in a small degree, which they did not consider would be sufficiently serious to affect the normal use of his sight. Dr. Smith found the vision in this eye to be 20/30, which means that it was about 90% normal. He gives it as his opinion that the plaintiff is faking his ability to see out of that eye, and claims to have arrived at these conclusions by some malingering tests which he gave. It is significant, however, that only one out of 3 or 4 tests which he gave indicated that plaintiff was malingering. Dr. Beil, an associate of Dr. Smith, gave about the same testimony and came to the same conclusion. This doctor likewise says that only one of his malingering tests out of 3 or 4 proved successful. However, both of these doctors would want to excuse the failure of the other tests upon plaintiff perceiving or knowing the tests. The tests given by Dr. Smith were not the same as given by Dr. Beil. Neither of these doctors examined the plaintiff for restrictive perepheral vision, they being satisfied that the plaintiff was malingering. They found no myopia, but on the contrary, found a slight hyperopia, or far-sightedness.
Another eye specialist, Dr. Brewster, of the City of New Orleans, upon the request of the defendants, examined the plaintiff *West Page 58 
only one time shortly before the trial, and found that plaintiff's vision in his left eye was normal, and that plaintiff had a vision of 20/35 in his right eye. He found some damage existing to the optic nerve and to the rest of the structures in the fundus. He found some paleness in the optic nerve and the fundus of the right eye, but could not say just what caused this paleness. However, he admits that it could have been caused by a trauma. Regarding the optic nerve he states that when they do become inflamed and the inflammation disappears, it is sometimes impossible to determine if a patient has not suffered a permanent injury to the eye. He was of the opinion, however, that the plaintiff was exaggerating his condition, but he would not class him as a malingerer. He further states that the doctor who had had the plaintiff under observation immediately after the injury, or soon thereafter, was in a better position to know whether or not the plaintiff had a defect in the vision of his right eye than any other specialist who saw him a year thereafter.
Dr. Burlington of New Orleans did not examine the plaintiff, but was called by the defendants to give expert testimony along the line of questions propounded to some of the other physicians, including Dr. Smith, and the answers given by them. He states that if the plaintiff is affected as he says he is, he is industrially blind, and he corroborates Dr. Phillips' statement to the effect that plaintiff will not be able to use a minus-7 lens for the reason that the use of such lens will cause him to have double vision and headaches.
The plaintiff is a young man about 21 years of age, and at the time of his injury was in his last year of high school. He had been examined by his teachers in the usual way when he entered school at the beginning of the sessions of 1939 and 1940. The records of these examinations by his teachers show that his vision at that time was normal. Plaintiff testified that he had had no trouble with his eyesight prior to the accident.
On the question of malingering as testified to by Dr. Smith and his associate, Dr. Beil, the trial judge must have necessarily come to the conclusion that the plaintiff was not faking. The plaintiff, in his testimony, impresses us as being very fair and frank. In view of the strong corroboration given to his testimony by the examinations and opinions of Dr. Phillips, who examined and observed him over a period of several months, together with the testimony of Dr. Lorio, we cannot subscribe to an opinion which would have the effect of classifying the plaintiff as a faker or malingerer. In due respect to Drs. Smith and Beil, we feel that we would have to have stronger proof than what they set out to put down in a book of judgment a decision which would characterize this plaintiff as a malingerer.
Our conclusion is that plaintiff has borne the burden of proof resting upon him to the effect that he is suffering from myopia as the result of the injury he received in the collision. He is thus entitled to recover damages for such injury.
The plaintiff suffered a serious impairment of his right eye. The medical testimony predominates to the effect that if he would use this minus-7 lens, it would cause him to have double vision and headaches. We feel that an award of $4,500 plus his medical expenses, would be more in line with our jurisprudence, and the judgment will therefore have to be reduced accordingly.
For these reasons, it is ordered, adjudged and decreed that the judgment appealed from is hereby amended so as to allow plaintiff damages to the amount of $4,721, and as thus amended, the judgment is affirmed; plaintiff to pay the cost of this appeal, the defendant to pay all costs incurred in the lower court. *West Page 59